

FILED by ___ RB ___ D.C.
ELECTRONIC

Apr 19, 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
# 12-60088-CR-WILLIAMS/SNOW

CASE NO. _____

18 U.S.C. § 1349
18 U.S C. § 1341
18 U.S.C. § 1343
18 U.S.C § 2
18 U.S.C § 981
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

JUAN CARLOS SANCHEZ,
QUELYORY A. RIGAL, a/k/a "Kelly,"
SANDRA P. CAMPO,
OSBELIA LAZARDI,
DAYANARA MONTERO,
EDWARD R. MENA,
CELESTE MOTA, and
DAVID ARBOLEDA,

          Defendants.

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At times material to this Indictment:

1.      A purchase of real property using financing generally begins with the borrower completing a Uniform Residential Loan Application Form 1003 (Form 1003) with the assistance of a mortgage broker or a lender's representative. The Form 1003 contains material information about the borrower's employment and income, assets and liabilities, cash available, and whether the

property is to be the primary residence, second home, or investment.   The information on the Form 1003 is relied upon when the lender is evaluating the credit worthiness of the borrower.

2.      The details of a conventional mortgage closing are reflected on a form called a Settlement Statement HUD-1 (HUD-1).  A HUD-1 is a form used by the settlement agent (also called the closing agent) to itemize all charges imposed on a borrower and seller for real estate transactions.  It gives each party a complete list of their incoming and outgoing funds.  Fees associated with the transaction but paid prior to closing are also included on the HUD-1 form.  The Real Estate Settlement Procedures Act ("RESPA"), Title12, United States Code, Sections 2601-2617, requires the HUD-1 form be used as the standard real estate settlement form in transactions in the United States which involve federally regulated mortgage loans.

3.      Real property closings are generally overseen by a closing or escrow "agent."  A closing agent is an individual or company that oversees the consummation of a mortgage transaction at which the note and other legal documents are signed and the loan proceeds and fees collected are disbursed.  Title companies, attorneys, settlement agents, and escrow agents can perform this service depending on the laws of the jurisdiction where the property is located.  Closing instructions are specific instructions prepared by a lender and/or underwriter to direct the manner in which a mortgage closing transaction is handled from start to finish.  Closing agents are obligated to follow the lender's specific closing instructions.

4.      "Cash to close" refers to the total amount of cash needed to complete a real estate transaction.  This cash includes the down payment on the purchase price of the real property and an amount of money sufficient to pay all the various transaction costs due from the borrower.  If these funds are not from the buyer, disclosure of the source of the down payment and other funds

necessary to close must be disclosed to and approved by the lender.

5.     IRS Form 1099-MISC is a required report filed with the Internal Revenue Service to report miscellaneous income payments when the taxpayer has paid $600 or more in non-employee payments to an individual during a calendar year.

6.     Marina Oaks Condominiums, formerly known as Berkshires at Marina Mile Apartments, was a 302 unit real estate condominium conversion begun in April 2006 that was located at 2445 SW 18 Terrace and 2550 SW 18 Terrace in Fort Lauderdale, Florida.   A condominium conversion is a legal process regulated by state statute whereby a property previously held as one entity under one title is converted to individual ownership of portions of the whole with multiple titles.

7.     Galleria Collection Marketing, Inc., was licensed by the State of Florida as a real estate brokerage, license number CQ1013187, located at 945 East Las Olas Boulevard, Fort Lauderdale,  Florida from in or about January 2007 through November 2008.  Galleria Collection Marketing, Inc., was the original real estate brokerage which marketed the properties at Marina Oaks Condominiums.

## LENDERS

8.     AMNET Mortgage, Inc., was a Delaware corporation registered in the State of Florida as a Foreign Corporation, d/b/a American Mortgage Network of Florida, Inc. with offices at 4830 W. Kennedy Blvd., Suite 850, Tampa, Florida 33609.

9.     Beacon Financial Mortgage Bankers Corp. was a Florida corporation with offices at 8726 NW 26th Street, Suite 24, Miami, Florida 33172.

10.     Bear Stearns Residential Mortgage Corporation was a Pennsylvania corporation

3

whose offices were located at 1 Chase Manhattan Plaza, New York, New York 10005.  Custodial

Trust Co. is a subsidiary of Bear Stearns Residential Mortgage Corporation.

11.    Countrywide Bank FSB was a California corporation with offices in Florida at 2400

NW 36th Street, Suite 420, Doral, Florida 33166.

12.    First Franklin Financial Corporation was a California corporation with offices at

2050 N. First Street, San Jose, California 95131.

13.    First Magnus Financial Corporation was an Arizona corporation with offices at 603

North Wilmot Road, Tucson, Arizona 85711.

14.    Homecomings Financial, LLC, was a Delaware corporation  registered in the State

of Florida as a foreign limited liability company with offices at 8400 Normandale Lake Blvd., Suite

350, Bloomington, Minnesota 55439.

15.    IndyMac Bank was a Federal Savings Bank (FSB) with offices at 155 North Lake

Avenue, Pasadena, California 91101.

16.     JP Morgan Chase Bank was a National Association (N.A.) with offices at 1111

Polaris Parkway, Columbus, Ohio 43240.

17.    Washington Mutual Bank was a State of Washington corporation with offices at 1400

South Douglas Road,  Suite 100, Anaheim, California 92806.

## DEFENDANTS

18 .    Defendant **JUAN  CARLOS  SANCHEZ** was licensed by the State of Florida as a

real estate broker, license number BK3196365, and as a real estate instructor, license number

ZH1002031, from at least in or about January 2007 through November 2008.

19.     Defendant **JUAN CARLOS SANCHEZ** was the registered agent and manager of Algendra LLC from at least in or about January 2007 through November 2008.

20.     Defendant **JUAN CARLOS SANCHEZ** was the registered agent and President of Homefirst Realty Group Inc., from at least in or about January 2007 through November 2008. From at least in or about January 2007, Homefirst Realty Group Inc., replaced Galleria Collection Marketing Inc., as the sole entity in marketing the Marina Oaks Condominiums.

21.     Defendant **JUAN CARLOS SANCHEZ** controlled the Bank of America account ending in 0473 in the name of Creative Concepts International, LLC.

22.     Defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** was President, Vice-President, Secretary, Treasurer and Director of Royal Prestige Rigal, Corp., from at least in or about January 2007 through November 2008.

23.     Defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** was licensed by the State of Florida as a mortgage broker with license number MB0801196, from at least in or about January 2007 through November 2008.

24.     Defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** was licensed by the State of Florida as a real estate broker with license number SL3192749, from at least on or about January 2007 through November 2008.

25.     Defendant **SANDRA P. CAMPO** was licensed by the State of Florida as a mortgage broker, license number MB0806903, operating a mortgage broker business under the name S International Mortgage Corp., license number MBB0702589, from at least on or about January 1, 2007 through November 2008.

26.     Defendant **SANDRA P. CAMPO** was president of S International Mortgage Corp., from at least in or about January 2007 through November 2008.

27.     Defendant **OSBELIA LAZARDI** was licensed by the State of Florida as a real estate broker with license number BK3137348, from at least in or about January 2007 through November 2008.

28.     Defendant **EDWARD R. MENA** was the Registered Agent and Manager of Magesty Group Management LLC, f/k/a Magesty Group LLC, from at least in or about January 2007 through November 2008 and controlled checking account ending in 1388 at Bank of America.

29.     Defendant **DAYANARA MONTERO** was a business associate of defendant **OSBELIA LAZARDI**.

30.     Defendant **CELESTE MOTA** was the sister of defendant **DAYANARA MONTERO**.

31.     Defendant **DAVID ARBOLEDA** was the son of defendant **OSBELIA LAZARDI**.

## COUNT 1
### Conspiracy to Commit Wire Fraud and Mail Fraud
### 18 U.S.C. § 1349

32.     The allegations contained in paragraphs 1 through 31 of the General Allegations Section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

33.     From in or about January 2007, and continuing through in or about November 2008, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**JUAN CARLOS SANCHEZ,**
**QUELYORY A. RIGAL, a/k/a "Kelly,"**
**SANDRA P. CAMPO,**
**OSBELIA LAZARDI,**
**DAYANARA MONTERO,**
**EDWARD R.  MENA,**
**CELESTE MOTA, and**
**DAVID ARBOLEDA,**

did knowingly and intentionally combine, conspire, confederate, and agree with each other and with

others known and unknown to the Grand Jury, to commit offenses against the United States, namely:

a.   to knowingly devise a scheme and artifice to defraud and for obtaining money and

property  by means of materially false and fraudulent pretenses, representations, and promises, and

for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by

means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and

sounds, in violation of Title 18, United States Code, Sections 1343 and 2.

b.  to knowingly and with intent to defraud to devise and intend to devise a scheme and

artifice to defraud and to obtain money and property, by means of materially false and fraudulent

pretenses, representations, and promises,  and for the purpose of executing such scheme and artifice

to defraud and attempting to do so, to knowingly cause certain mail matter to be delivered by the

United States Postal Service and private or commercial interstate carrier, according to the directions

thereon, in violation of Title 18, United States Code, Sections 1341 and 2.

## OBJECTIVE OF THE CONSPIRACY

34.     The defendants **JUAN CARLOS SANCHEZ, QUELYORY A. RIGAL, a/k/a**

**"Kelly," SANDRA P. CAMPO, OSBELIA LAZARDI, DAYANARA MONTERO, EDWARD**

**R. MENA, CELESTE MOTA** and **DAVID ARBOLEDA**, and others known and unknown to the

Grand Jury, sought to unlawfully enrich themselves by preparing and submitting, and causing to be prepared and submitted, materially false and fraudulent mortgage applications on Forms 1003, HUD-1 Forms and supporting documents, which contained false and fraudulent information as to material facts about the borrowers' credit worthiness, to obtain mortgage money from lenders for the purchase of residential condominium units at Marina Oaks Condominiums in Fort Lauderdale, Florida. It was a further objective of the conspiracy to knowingly and intentionally mislead the mortgage lenders as to the ultimate distribution of a significant portion of the mortgage proceeds fraudulently being given to the borrowers with regard to residential properties located at the Marina Oaks Condominiums, Fort Lauderdale, Florida without the knowledge of the lenders. It was a further objective of the conspiracy that the defendants also fraudulently and unlawfully diverted mortgage loan proceeds for their own personal use and benefit, to pay the purchasers' closing costs and incentives, and to further the scheme to defraud the mortgage lenders. It was a further objective of the conspiracy that the participants perpetuate and conceal the operation of the scheme and the violations of the laws of the United States.

## MANNER AND MEANS

The substance of the scheme and artifice and the manner and means utilized to accomplish its ends included, among other things, the following:

35.    At least as early as January 2007, defendant **JUAN CARLOS SANCHEZ** operating Homefirst Realty Group Inc., began marketing the Marina Oaks Condominiums in Fort Lauderdale, Florida. Defendant **JUAN CARLOS SANCHEZ** was given control of the marketing of Marina Oaks Condominiums and increased the sales price of the individual condominium properties up to approximately $40,000 per unit.

36.     The condominium buyers were promised various buyers' incentives that would pay all of their closing costs, refund of their initial deposits, and payment of their monthly condominium association dues. The buyers were advised that they would not have out of pocket expenses, that they would be paid approximately $30,000-$40,000 after the transaction closed, and that an IRS Form 1099-MISC reflecting the incentive money paid to the buyers would not be filed with the Internal Revenue Service.

37.     At least as early as January 2007, defendants **JUAN CARLOS SANCHEZ, QUELYORY A. RIGAL, a/k/a "Kelly," OSBELIA LAZARDI, DAYANARA MONTERO** and **DAVID ARBOLEDA,** utilizing the incentives set forth in paragraph 36, began recruiting buyers to purchase properties at Marina Oaks Condominiums.

38.     Buyers were encouraged to purchase multiple condominium units at Marina Oaks Condominiums by defendants **JUAN CARLOS SANCHEZ, QUELYORY A. RIGAL, a/k/a "Kelly," OSBELIA LAZARDI** and **DAYANARA MONTERO,** with promises of generous buyers' incentives and a rental income program that would cover the monthly mortgage payments. When buyers did purchase multiple units their loan applications were expedited and intentionally directed to different lenders to avoid detection. The multiple purchases were intentionally and fraudulently not listed or cross-referenced on any of the individual loan applications submitted to the various lenders.

39.     Buyers who actually purchased units at Marina Oaks Condominiums received significant monetary incentives ranging from $2,000 to $60,000 after purchasing the properties.

40.     At least as early as January 2007, defendants **SANDRA P. CAMPO** and **QUELYORY A. RIGAL, a/k/a "Kelly,"** began originating mortgage loans at Marina Oaks

Condominiums.

41.    Defendants **JUAN CARLOS SANCHEZ, QUELYORY A. RIGAL, a/k/a "Kelly,"** **SANDRA P. CAMPO, OSBELIA LAZARDI, DAYANARA MONTERO, EDWARD R.** **MENA, CELESTE MOTA** and **DAVID ARBOLEDA** prepared and caused to be prepared false and fraudulent mortgage loan applications and other related documents.  These mortgage applications and related documents, which were submitted to the lenders, such as Amnet Mortgage Inc., d/b/a American Mortgage Network of Florida, Inc., Beacon Financial Mortgage Bankers Corp., Bear Stearns Residential Mortgage Corporation, Countrywide Home Loans Inc., First Franklin Financial Group, First Magnus Financial Corporation, Homecoming Financial LLC, IndyMac Bank, FSB, JP Morgan Chase Bank N.A., and Washington Mutual Bank, contained numerous false and fictitious statements and representations relating to the borrowers' employment,  income, funds available for closing, intent to make the property a primary residence, other real property owned, rental history and other information material and necessary for the lenders to assess the purchasers' qualifications to borrow money.

42.    Defendant  **SANDRA P. CAMPO,** through her company S International Mortgage Corp., completed and submitted numerous fraudulent loan application packages to the various lenders listed above.

43.    Defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** acting as an independent mortgage broker on behalf of the purchaser, completed and submitted numerous fraudulent loan applications and documents to intermediary companies who packaged and forwarded the loan applications and documents to the various lenders listed above.

44.    Defendants **JUAN CARLOS SANCHEZ, QUELYORY A. RIGAL, a/k/a "Kelly,"**

10

**SANDRA P. CAMPO** and **OSBELIA LAZARDI** would prepare and cause to be prepared false and fraudulent HUD-1's, which among other things, would falsely represent to the lenders that the buyers met their cash-to-close obligation. In truth and in fact, defendants **JUAN CARLOS SANCHEZ, QUELYORY A. RIGAL, a/k/a "Kelly," SANDRA P. CAMPO,** and **OSBELIA LAZARDI** would provide the funds for the buyers' cash-to-close obligations, thereby intentionally misleading the lenders as to the true source of the buyers' funds being used to close the loans.

45.     The lenders approved the mortgage loan application packages not knowing that the applications contained false and fraudulent Form 1003s, fraudulent supporting documents, and fraudulent HUD-1s submitted to the lenders. The lenders disbursed the loan proceeds via wire transfers to the closing agents' escrow and trust accounts.

46.     At the closings, the borrowers were required to sign and re-acknowledge all of the information initially provided on the Form 1003s and sign the HUD-1s.

47.     Once the mortgage proceeds were sent to the closing agent, a portion of the proceeds were disbursed according to the instructions on the HUD-1s to one of defendant **JUAN CARLOS SANCHEZ's** companies, specifically, Homefirst Realty Group Inc., or Creative Concepts International, LLC. Shortly thereafter, defendant **JUAN CARLOS SANCHEZ** would pay a portion of the funds from the closing proceeds received by one of his companies to the buyers as the promised buyers' incentive, without the lenders' knowledge and authorization.

48.     Defendant **EDWARD R. MENA** utilized his company known as Magesty Group Management, LLC, f/k/a Magesty Group LLC, to assist defendant **JUAN CARLOS SANCHEZ** in providing the promised incentives to the buyers.

49.     Defendants **JUAN CARLOS SANCHEZ, QUELYORY A. RIGAL, a/k/a "Kelly,"**

**SANDRA P. CAMPO, OSBELIA LAZARDI, DAYANARA MONTERO, EDWARD R. MENA, CELESTE MOTA** and **DAVID ARBOLEDA** caused over $39,000,000 in fraudulent mortgage loans to be funded by the various mortgage lenders over the course of the scheme.

As to each of the properties, the manner and means utilized by the conspirators is more specifically set forth as follows:

50.   2550 SW 18 TERRACE #1702 FORT LAUDERDALE, FLORIDA

A.  On or about January 23, 2007, a person identified as A.M. signed a contract to purchase Unit #1702 at Marina Oaks Condominiums located at 2550 SW 18 Terrace for $279,900.

B.  On or about April 17, 2007, defendant **SANDRA P. CAMPO** assisted A.M. in applying for a mortgage loan from American Mortgage Network of Florida, Inc. in the amount of $209,925 to be secured by the 2550 SW 18 Terrace #1702 property.

C.  On or about April 17, 2007, defendant **SANDRA P. CAMPO** assisted A.M. in applying for a subordinate mortgage loan from American Mortgage Network of Florida, Inc. in the amount of $69,975 to be secured by the 2550 SW 18 Terrace #1702 property.

D.  On or about April 17, 2007, defendant **SANDRA P. CAMPO** caused fraudulent W-2's for 2005 and 2006 for A.M. to be faxed to American Mortgage Network of Florida, Inc.

E.  On or about April 17, 2007, defendant **SANDRA P. CAMPO** caused fraudulent pay stubs for A.M. to be faxed to American Mortgage Network of Florida, Inc.

F.  On or about April 30, 2007,  JP Morgan Chase Bank N.A., in New York, New York, wire transferred $213,280.36 to a title company bank account ending in 4225 at Bank of America.

G.  On or about April 30, 2007, JP Morgan Chase Bank N.A., in New York, New

12

York, wire transferred $69,238.38 to a title company bank account ending in 4225 at Bank of America in Miami, Florida.

      H.  On or about April 30, 2007, A.M. signed the HUD-1 for the $209,925 loan.

      I.  On or about April 30, 2007, A.M. signed the HUD-1 for the $69,975 loan.

      J.  On or about April 30, 2007, A.M. executed an Occupancy Agreement pertaining to the mortgaged property at 2550 SW 18 Terrace #1702, Ft. Lauderdale, Florida, that was submitted to American Mortgage Network of Florida, Inc.

      K.  On or about April 30, 2007, A.M. executed a Borrower's Certification and Authorization that was submitted to American Mortgage Network of Florida, Inc.

      L.  On or about May 4, 2007, defendant **JUAN CARLOS SANCHEZ** wrote check #1055 drawn on the Algendra LLC account ending in 6368 at Bank of America payable to "A.M." in the amount of $31,603.

      M.  On or about May 9, 2007, defendant **DAVID ARBOLEDA** caused A.M. to write checks numbered 335, 336 and 337, each check in the amount of $7,200, drawn on A.M.'s account ending in 8368 at Bank of America payable to "DAVID ARBOLEDA."

      N.  On or about May 10, 2007, defendant **DAVID ARBOLEDA** negotiated checks numbered 335, 336 and 337, each check in the amount of $7,200, drawn on A.M.'s account ending in 8368 at Bank of America payable to "DAVID ARBOLEDA."

      O.  On or about May 14, 2007, defendant **DAVID ARBOLEDA** caused A.M. to write check numbered 340 in the amount of $1,265, drawn on A.M.'s account ending in 8368 at Bank of America payable to "DAVID ARBOLEDA."

      P.  On or about May 17, 2007, defendant **DAVID ARBOLEDA** negotiated check

numbered 340 in the amount of $1,265, drawn on A.M.'s account ending in 8368 at Bank of America  payable to "DAVID ARBOLEDA."

Q.  On or about May 28, 2007,  A.M. wrote check numbered 342 in the amount of $8,000, drawn on A.M.'s account ending in 8368 at Bank of America payable to an automobile dealership.

R. On or about June 2, 2007, defendant **DAVID ARBOLEDA** caused A.M. to write check numbered 343 in the amount of $1,265,  drawn on A.M.'s account ending in 8368 at Bank of America payable to "DAVID ARBOLEDA".

S.  On or about June 5, 2007, defendant **DAVID  ARBOLEDA** negotiated check numbered 343 in the amount of $1,265, drawn on A.M.'s account ending in 8368 at Bank of America payable to "DAVID ARBOLEDA."

51.  <u>2445 SW 18 TERRACE #909  FORT LAUDERDALE, FLORIDA</u>

A.  On or about February 7, 2007, defendant **EDWARD R. MENA** signed a contract to purchase Unit #909 at Marina Oaks condominiums located at 2445 SW 18 Terrace for $199,900.

B. On or about March 26, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** assisted defendant **EDWARD R. MENA** in applying for a mortgage loan from JP Morgan Chase Bank N.A. in the amount of $199,900 to be secured by the 2445 SW 18 Terrace #909 property.

C. On or about April 13, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** caused fraudulent pay stubs for defendant **EDWARD R. MENA** to be faxed to JP Morgan Chase Bank N.A.

D. On or about April 23, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** caused a fraudulent Verification of Rent for defendant **EDWARD R. MENA** to be faxed to JP

14

Morgan Chase Bank N.A.

E. On or about May 9, 2007, defendant **EDWARD R. MENA** signed the HUD-1 for the $199,900 loan.

F. On or about May 9, 2007, JP Morgan Chase Bank N.A., in New York, New York wire transferred $200,067.19 to a title company bank account ending in 4225 at Bank of America in Miami, Florida.

G. On or about May 9, 2007, defendant **EDWARD R. MENA** withdrew $4,158.14 from Bank of America account ending in 8461 and purchased Bank of America cashier's check #5626126 payable to a title company with the notation "For Closing Cost Apt 909" in the lower left memo section of the check.

H. On or about May 10, 2007, defendant **JUAN CARLOS SANCHEZ** wrote check #2164 drawn on the Algendra account ending in 6481 at Bank of America payable to "Edward Mena" in the amount of $34,995 with the notation "Furniture Incentive MO 909" in the lower left memo section of the check.

I. On or about May 11, 2007, a mortgage loan processor wrote check #1554 drawn on Bank of America account ending in 4854 in the amount of $4,321.73 payable to "Quelyory Regal" with the notation "909" in the lower left memo section of the check.

J. On or about May 14, 2007, defendant **EDWARD R. MENA** deposited check #2164 drawn on the Algendra account ending in 6481 at Bank of America in the amount of $34,995 into Bank of America account ending in 8461.

K. On or about May 15, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** deposited check #1554 drawn on a mortgage loan processor account ending in 4854 at Bank of

America in the amount of $4,321.73 into Bank of America account ending in 8461.

52.  2445 SW 18 TERRACE #215 FORT LAUDERDALE, FLORIDA

A.  On or about January 27, 2007, a person identified as R.G. signed a contract to purchase Unit #215 at Marina Oaks Condominiums located at 2445 SW 18 Terrace for $279,900.

B.  On or about March 6, 2007, defendant **SANDRA P. CAMPO** assisted R.G. in applying for a mortgage loan from American Mortgage Network of Florida, Inc. in the amount of $209,925 to be secured by the 2445 SW 18 Terrace #215 property.

C.  On or about March 6, 2007, defendant **SANDRA P. CAMPO** assisted R.G. in applying for a subordinate mortgage loan from Beacon Financial Mortgage Bankers Corp., in the amount of $69,975 to be secured by the 2445 SW 18 Terrace #215 property.

D.  On or about March 6, 2007, R.G. executed a Borrowers Certification and Authorization that was submitted to American Mortgage Network of Florida, Inc. by defendant **SANDRA P. CAMPO.**

E.  On or about March 6, 2007, R.G. executed Disclosure Notices to include an Affidavit of Occupancy that was submitted to American Mortgage Network of Florida, Inc. by defendant **SANDRA P. CAMPO**.

F.  On or about May 1, 2007, defendant **SANDRA P. CAMPO** caused fraudulent W-2's for tax years 2005 and 2006 for R.G. to be faxed to American Mortgage Network of Florida, Inc.

G.  On or about May 2, 2007, defendant **DAYANARA MONTERO** completed a fraudulent request for verification of rent or mortgage for R.G. which was submitted to American Mortgage Network of Florida, Inc.

H.  On or about May 10, 2007, defendant **SANDRA P. CAMPO** caused fraudulent pay stubs for R.G. to be faxed to American Mortgage Network of Florida, Inc.

I.  On or about May 11, 2007, Wachovia Bank N.A. in Charlotte, North Carolina, wire transferred $212,907.83 to a title company bank account ending in 4225 at Bank of America in Miami, Florida.

J.  On or about May 11, 2007, Wachovia Bank N.A. in Charlotte, North Carolina, wire transferred $68,939.71 to a title company bank account ending in 4225 at Bank of America in Miami, Florida.

K.  On or about May 11, 2007, R.G. signed the HUD-1 for the $209,925 loan.

L.  On or about May 11, 2007, R.G. signed the HUD-1 for the $69,975 loan.

M.  On or about May 11, 2007, R.G. executed an Occupancy Agreement pertaining to the mortgaged property at 2445 SW 18 Terrace #215, Ft. Lauderdale, FL that was submitted to American Mortgage Network of Florida, Inc.

N.  On or about March 11, 2007, R.G. executed a Borrower's Certification and Authorization that was submitted to American Mortgage Network of Florida, Inc.

O.  On or about May 15, 2007, a title company in Miami, Florida, mailed the closing package to American Mortgage Network Inc., Tampa, Florida, via Federal Express, FedEx tracking #798175488330.

P.  On or about May 22, 2007, defendant **JUAN CARLOS SANCHEZ** wrote check #1079 drawn on the Algendra LLC account ending in 6368 at Bank of America payable to "R.G." in the amount of $31,603.

53.    2550 SW 18 TERRACE #1709  FORT LAUDERDALE, FLORIDA

17

A.  On or about February 6, 2007, defendant **CELESTE MOTA** signed a contract to purchase Unit #1709 at Marina Oaks Condominiums located at 2550 SW 18 Terrace for $279,900.

B.  On or about February 13, 2007, defendant **DAYANARA MONTERO** and defendant **SANDRA P. CAMPO** caused a fraudulent Verification of Employment to be signed and submitted to American Mortgage Network of Florida, Inc. claiming defendant **CELESTE MOTA** was employed as the "office mngr" at B.D.

C.  On or about April 10, 2007, defendant **SANDRA P. CAMPO** assisted defendant **CELESTE MOTA** in applying for a mortgage loan from American Mortgage Network of Florida, Inc. in the amount of $279,900 to be secured by the 2550 SW 18 Terrace #1709 property.

D.  On or about April 10, 2007, defendant **CELESTE MOTA** executed a Borrowers' Certification and Authorization that was submitted to American Mortgage Network of Florida, Inc. by defendant **SANDRA P. CAMPO**.

E.  On or about April 10, 2007, defendant **CELESTE MOTA** executed  Disclosure Notices to include an Affidavit of Occupancy that were submitted to American Mortgage Network of Florida, Inc. by defendant **SANDRA P. CAMPO**.

F.  On or about May 10, 2007, defendants **DAYANARA MONTERO** and **SANDRA P. CAMPO** caused American Mortgage Network of Florida, Inc. to contact a company identified as B.D. by telephone to verify employment for defendant **CELESTE MOTA**.

G.  On or about May 10, 2007, defendant **SANDRA P. CAMPO** caused a fraudulent pay stub for defendant **CELESTE MOTA** to be submitted to American Mortgage Network of Florida, Inc.

H.  On or about May 10, 2007, defendant **SANDRA P. CAMPO** caused fraudulent

bank statements for Bank of America account ending in 3294, an account in the name of defendant **OSBELIA LAZARDI** and defendant **DAVID ARBOLEDA** purporting to be the bank account of defendant **CELESTE MOTA** to be submitted to American Mortgage Network of Florida, Inc.

  I.  On or about May 18, 2007, defendant **CELESTE MOTA** signed the HUD-1 for the $279,900 loan.

  J. On or about May 18, 2007, defendant **CELESTE MOTA** executed an Occupancy Agreement pertaining to the mortgaged property at 2550 SW 18 Terrace #1709, Ft. Lauderdale, Florida, that was submitted to American Mortgage Network of Florida, Inc.

  K. On or about May 18, 2007, defendant **CELESTE MOTA** executed a Borrower's Certification and Authorization that was submitted to American Mortgage Network of Florida, Inc.

  L.  On or about May 21, 2007, Wachovia Bank N.A. in Charlotte, North Carolina, wire transferred $278,517.67 to a title company bank account ending in 4225 at Bank of America in Miami, Florida.

  M. On or about May 21, 2007, a title company in Miami, Florida, mailed the closing package to American Mortgage Network Inc., Tampa, Florida, via Federal Express, FedEx tracking #791304507543.

  N.  On or about May 30, 2007, defendant **JUAN CARLOS SANCHEZ** wrote check #2254 drawn on the Algendra LLC account ending in 6481 at Bank of America payable to "celeste mota" in the amount of $31,603.

  54. <u>2550 SW 18 TERRACE #2107 FORT LAUDERDALE, FLORIDA</u>

  A.  On or about January 22, 2007, a person identified as M.B. signed a contract to purchase Unit #2107 at Marina Oaks Condominiums located at 2550 SW 18 Terrace for $279,900.

B.   On or about January 24, 2007, M.B. executed a Borrowers' Certification and Authorization that was submitted to American Mortgage Network of Florida, Inc. by defendant **SANDRA P. CAMPO**.

C.   On or about March 20, 2007, defendant **SANDRA P. CAMPO** assisted M.B. in applying for a mortgage loan from American Mortgage Network of Florida, Inc. in the amount of $279,900 to be secured by the 2550 SW 18 Terrace #2107 property.

D.   On or about April 24, 2007, M.B. executed Disclosure Notices to include an Affidavit of Occupancy that was submitted to American Mortgage Network of Florida, Inc. by defendant **SANDRA P. CAMPO**.

E.   On or about May 15, 2007, defendant **SANDRA P. CAMPO** caused American Mortgage Network of Florida, Inc. to contact a company identified as O. & Z., LLC  to verify employment for M.B.

F.   On or about May 18, 2007, defendant **SANDRA P. CAMPO** caused fraudulent pay stubs for M.B. to be submitted to American Mortgage Network of Florida, Inc.

G.  On or about May 18, 2007, defendant **SANDRA P. CAMPO** caused a fraudulent lease agreement for property located at 12625 Arbor Isles Drive, Tampa, Florida, to be submitted to American Mortgage Network of Florida, Inc.

H.   On or about May 22, 2007, M.B. signed the HUD-1 for the $279,900 mortgage loan to purchase the property at 2550 SW 18 Terrace #2107, Ft. Lauderdale, Florida.

I.   On or about May 22, 2007, M.B. executed an Occupancy Agreement pertaining to the mortgaged property at 2550 SW 18 Terrace #2107, Ft. Lauderdale, Florida, that was submitted to American Mortgage Network of Florida, Inc.

20

J. On or about May 22, 2007, M.B. executed a Borrower's Certification and Authorization that was submitted to American Mortgage Network of Florida, Inc.

K. On or about May 22, 2007, Wachovia Bank N.A. in Charlotte, North Carolina, wire transferred $278,153.88 to a title company bank account ending in 4225 at Bank of America in Miami, Florida.

L. On or about May 23, 2007, a title company,  in Miami, Florida, mailed the closing package to American Mortgage Network, Plantation, Florida, via Federal Express, FedEx tracking #799645318110.

M. On or about June 4, 2007, defendant **JUAN CARLOS SANCHEZ** wrote check #2293 drawn on the Algendra LLC account ending in 6481 at Bank of America payable to "M.B." in the amount of $31,603.

55. <u>2445 SW 18 TERRACE #1205 FORT LAUDERDALE, FLORIDA</u>

A. On or about January 30, 2007, a person identified as M.G. signed a contract to purchase Unit #1205 at Marina Oaks Condominiums located at 2445 SW 18 Terrace for $279,900.

B. On or about March 9, 2007, M.G. executed a Borrowers' Certification and Authorization that was submitted to American Mortgage Network of Florida, Inc. by defendant **SANDRA P. CAMPO**.

C. On or about March 9, 2007, M.G. executed Disclosure Notices to include an Affidavit of Occupancy that was submitted to American Mortgage Network of Florida, Inc. by defendant **SANDRA P. CAMPO**.

D. On or about May 14, 2007, defendant **SANDRA P. CAMPO** assisted M.G. in applying for a mortgage loan from American Mortgage Network of Florida, Inc. in the amount of

$279,900 to be secured by the 2445 SW 18 Terrace #1205 property.

E.  On or about May 25, 2007, defendant **SANDRA P. CAMPO** caused fraudulent pay stub for M.G. to be submitted to American Mortgage Network of Florida, Inc.

F.  On or about June 6, 2007, defendant **SANDRA P. CAMPO** caused American Mortgage Network of Florida, Inc. to contact a company identified as J.F. & Associates to verify employment for M.G.

G.  On or about June 12, 2007, M.G. signed the HUD-1 for the $279,900 loan.

H.  On or about June 12, 2007, M.G. executed an Occupancy Agreement pertaining to the mortgaged property at 2550 SW 18 Terrace #1205, Ft. Lauderdale, Florida, that was submitted to American Mortgage Network of Florida, Inc.

I.  On or about June 12, 2007, M.G. executed a Borrower's Certification and Authorization that was submitted to American Mortgage Network of Florida, Inc.

J.  On or about June 13, 2007, Wachovia Bank N.A. in Charlotte, North Carolina, wire transferred $277,522.07 to a title company bank account ending in 4225 at Bank of America in Miami, Florida.

K.  On or about June 14, 2007, a title company, in Miami, Florida, mailed the closing package to American Mortgage, Plantation, Florida, via Federal Express, FedEx tracking #799658495340.

L.  On or about June 29, 2007, defendant **JUAN CARLOS SANCHEZ** wrote check #2442 drawn on the Algendra LLC account ending in 6481 at Bank of America payable to "M.G." in the amount of $31,603.

56.    2445 SW 18 TERRACE #217  FORT LAUDERDALE, FLORIDA

A.  On or about January 16, 2007, defendant **EDWARD R. MENA** signed a contract to purchase Unit #217 at Marina Oaks Condominiums located at 2445 SW 18 Terrace for $204,990.

B.  On February 7, 2007, defendant **EDWARD R. MENA** signed a Change Addendum lowering the price for Unit #217 Marina Oaks Condominiums located at 2445 SW 18 Terrace from $204,990 to $199,900.

C.  On or about February 9, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** assisted defendant **EDWARD R. MENA** in applying for a mortgage loan from Countrywide Bank FSB in the amount of $189,905 to be secured by the 2445 SW 18 Terrace #217 property.

D.  On or about March 21, 2007, defendant **QUELYORY A. RIGAL, a/ka" Kelly,"** caused a fraudulent 2006 W-2 for defendant **EDWARD R. MENA** to be faxed to Countrywide Bank FSB.

E.  On or about March 21, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** caused a fraudulent pay stub for defendant **EDWARD R. MENA** to be faxed to Countrywide Bank FSB.

F.  On or about March 21, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** caused fraudulent bank statements purporting to be defendant **EDWARD R. MENA's** Washington Mutual Bank account ending in 8077 to be faxed to Countrywide Bank FSB.

G.  On or about March 27, 2007, defendant **EDWARD R. MENA** signed the HUD-1 for the $189,905 loan.

H.  On or about March 27, 2007, defendant **EDWARD R. MENA** executed a Borrower's Certification and Authorization that was submitted to Countrywide Bank FSB.

I.  On or about March 27, 2007, Bank of New York wire transferred $193,810.13 to a title company bank account ending in 4225 at Bank of America.

J.  On or about March 27, 2007, a title company, in Miami, Florida, mailed the closing package to Countrywide Home Loans, Doral, Florida, via Federal Express, FedEx tracking #792314679196.

K. On or about March 29, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** wrote check #282 drawn on her and defendant **EDWARD R. MENA's** joint Bank of America bank account ending in 8461 in the amount of $18,371.02 noted "Closing Cost" and exchanged this check for Bank of America cashier's check #5480029 in the amount of $18,371.02 made payable to a title company.

L.  On or about March 29, 2007, defendant **JUAN CARLOS SANCHEZ** wrote check #0997 drawn on the Algendra LLC account ending in 6368 at Bank of America payable to "Edward Mena" in the amount of $21,623.

M.  On or about March 29, 2007, defendant **JUAN CARLOS SANCHEZ** wrote check #0998 drawn on the Algendra LLC account ending in 6368 at Bank of America payable to "Quelyori Regal" in the amount of $9,000.

N.  On or about March 29, 2007, defendant **JUAN CARLOS SANCHEZ** wrote check #0999 drawn on the Algendra LLC account ending in 6368 at Bank of America payable to "Quelyori Regal" in the amount of $9,371.

O.  On or about March 30, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** deposited checks #0998 and #0999 drawn on the Algendra LLC account at Bank of America in the amount of $9,000 and $9,371, respectively, into her and defendant **EDWARD R. MENA's** joint

24

account ending in 8461 at Bank of America.

P.  On or about March 30, 2007, defendant **EDWARD R. MENA** deposited check #0997 drawn on the Algendra LLC account ending in 6368 at Bank of America in the amount of $21,623 into his account ending in 6757 at Bank of America.

57.  2445 SW 18 TERRACE #512  FORT LAUDERDALE, FLORIDA

A.  On or about January 18, 2007, defendant **EDWARD R. MENA** signed a contract to purchase Unit #512 at Marina Oaks Condominiums located at 2445 SW 18 Terrace for $204,990.

B.  On February 7, 2007, defendant **EDWARD R. MENA** signed a Change Addendum lowering the price for Unit #512 Marina Oaks Condominiums located at 2445 SW 18 Terrace from $204,990 to $199,900.

C.  On or about February 20, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** assisted defendant **EDWARD R. MENA** in applying for a mortgage loan from First Magnus Financial Corporation in the amount of $189,905 to be secured by the 2445 SW 18 Terrace #512 property.

D.  On or about February 20, 2007, defendant **EDWARD R. MENA** executed a Borrowers' Certification and Authorization that was submitted by defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** to First Magnus Financial Corporation.

E.  On or about March 14, 2007, defendants **QUELYORY A. RIGAL, a/k/a "Kelly,"** and **EDWARD R. MENA** caused a fraudulent Verification of Employment for defendant **EDWARD R. MENA** to be submitted to First Magnus Financial Corporation.

F.  On or about March 27, 2007, defendant **EDWARD R. MENA** executed an Occupancy Agreement pertaining to the mortgaged property at 2445 SW 18 Terrace #512, Ft.

25

Lauderdale, Florida, that was submitted to First Magnus Financial Corporation.

      G. On or about March 29, 2007, defendant **EDWARD R. MENA** signed the HUD-1 for the $189,905 loan.

      H. On or about March 29, 2007, defendant **EDWARD R. MENA** executed a Borrower's Certification and Authorization that was submitted to First Magnus Financial Corporation.

      I. On or about March 29, 2007, First Magnus Financial Corp. wire transferred $188,060.64 from their account at Washington Mutual Bank, Stockton, California to a title company bank account ending in 4225 at Bank of America in Miami, Florida.

      J. On or about March 31, 2007, a title company, in Miami, Florida, mailed the closing package to First Magnus Financial Corporation, Ft. Lauderdale, Florida, via Federal Express, FedEx tracking #792960540475.

      K. On or about April 2, 2007, defendant **EDWARD R. MENA** wrote check #101 drawn on his Bank of America account ending in 6757 in the amount of $15,538.75 and he exchanged this check for Bank of America cashier's check #5641958 in the amount of $15,538.75 made payable to a title company with the notation, "Closing Cost APT NO 512" in the lower left memo section of the check.

      L. On or about April 5, 2007, defendant **JUAN CARLOS SANCHEZ** wrote check #1006 drawn on the Algendra LLC account ending in 6368 at Bank of America payable to "Edward Mena" in the amount of $34,995.

      M. On or about April 10, 2007, defendant **EDWARD R. MENA** deposited check #1006 drawn on the Algendra LLC account ending in 6368 at Bank of America in the amount of

$34,995 into his account ending in 6757 at Bank of America.

58.   2550 SW 18 TERRACE #2205 FORT LAUDERDALE, FLORIDA

A. On or about February 1, 2007, defendant **EDWARD R. MENA** signed a contract to purchase Unit #2205 at Marina Oaks Condominiums located at 2550 SW 18 Terrace for $204,990.

B.   On February 7, 2007, defendant **EDWARD R. MENA** signed a Change Addendum lowering the price for Unit #2205 Marina Oaks Condominiums located at 2550 SW 18 Terrace to $199,900.

C. On or about March 27, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** assisted defendant **EDWARD R. MENA** in applying for a mortgage loan from IndyMac Bank, FSB in the amount of $189,905 to be secured by the 2550 SW 18 Terrace #2205 property.

D. On or about March 30, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** caused a fraudulent Verification of Rent for defendant **EDWARD R. MENA** to be submitted to IndyMac Bank, FSB.

E. On or about April 6, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** caused a fraudulent Verification of Employment for defendant **EDWARD R. MENA** to be submitted to IndyMac Bank, FSB.

F. On or about April 24, 2007, defendant **EDWARD R. MENA** signed the HUD-1 for the $189,905 loan.

G.   On or about April 24, 2007, defendant **EDWARD R. MENA** executed an Occupancy Agreement pertaining to the mortgaged property at 2550 SW 18 Terrace #2205, Ft. Lauderdale, Florida, that was submitted to IndyMac Bank, FSB.

27

H.   On or about April 24, 2007, defendant **EDWARD R. MENA** executed a Certification and Authorization to Release Information that was submitted to IndyMac Bank, FSB.

I.   On or about April 24, 2007, IndyMac Bank, FSB, in Pasadena, California, wire transferred $193,551.66 to a title company bank account ending in 4225 at Bank of America.

J.   On or about April 25, 2007, defendant **EDWARD R. MENA** withdrew $11,000 from **MENA's** Bank of America account ending in 6757 and purchased Bank of America cashier's check #5625889 payable to a title company, noted "Closing Unit 2205".

K.   On or about April 25, 2007, a title company, in Miami, Florida, mailed the closing package to IndyMac Bank, FSB, Tampa, Florida, via Federal Express, FedEx tracking #790725042783.

L.   On or about April 30, 2007, defendant **JUAN CARLOS SANCHEZ** wrote check #2069 drawn on the Algendra LLC account ending in 6481 at Bank of America to "Edward Mena" in the amount of $34,000 with the notation "Unit 2205 Furniture Incentive" in the lower left memo section.

M.   On or about May 1, 2007, defendant **EDWARD R. MENA** deposited check #2069 drawn on the Algendra LLC account ending in 6481 at Bank of America in the amount of $34,000 into his account ending in 6757 at Bank of America.

59.   <u>2445 SW 18 TERRACE #220 FORT LAUDERDALE, FLORIDA</u>

A.   On or about April 20, 2007, a person identified as C.V. signed a contract to purchase Unit #220 at Marina Oaks Condominiums located at 2445 SW 18 Terrace for $199,900.

B.   On or about May 21, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** wrote check #313 drawn on her and defendant **EDWARD R. MENA's** joint Bank of America bank

account ending in 8461 in the amount of $6,500 payable to C.V. with the notation "Prestamo Para Aptos" in the lower left memo section of the check.

      C.  On or about May 22, 2007, C.V. deposited check #313 drawn on defendants **QUELYORY A. RIGAL's, a/k/a "Kelly,"** and **EDWARD R. MENA's** joint Bank of America bank account ending in 8461 in the amount of $6,500 into C.V.'s Bank of America account ending in 5842.

      D.  On or about June 1, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** assisted C.V. in applying for a mortgage loan from JP Morgan Chase Bank N.A., in the amount of $199,900 to be secured by the 2445 SW 18 Terrace #220 property.

      E.  On or about June 1, 2007, defendant **QUELYORY A. RIGAL,  a/k/a "Kelly,"** caused a fraudulent pay stub for C.V. to be submitted to JP Morgan Chase Bank N.A.

      F.  On or about June 12, 2007, defendant **QUELYORY A. RIGAL,  a/k/a "Kelly,"** caused Bank of America to fax a Verification of Deposit for C.V.'s account ending in 5842 to a mortgage loan processor which was subsequently submitted to JP Morgan Chase Bank N.A.

      G.  On or about June 22, 2007, C.V. signed the HUD-1 for the $199,900 loan.

      H.  On or about June 22, 2007, JP Morgan Chase Bank N.A., in New York, New York, wire transferred $199,778.88 to a title company bank account ending in 4225 at Bank of America.

      I.  On or about June 25, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** wrote check #337 drawn on her and defendant **EDWARD R. MENA's** joint Bank of America bank account ending in 8461 in the amount of $2,161.69 payable to "C.V." with the notation "Closing Cost" in the lower left memo section of the check.

J. On or about June 26, 2007, C.V. cashed check #337 payable to C.V. drawn on defendants **QUELYORY A. RIGAL's, a/k/a "Kelly,"** and **EDWARD R. MENA's** joint account ending in 8461 at Bank of America in the amount of $2,161.69. With the aforementioned funds, C.V. purchased Bank of America cashier's check #5834206 in the amount of $2,161.69 payable to a title company.

K. On or about June 27, 2007, a title company wire transferred $9,995 from Bank of America account ending in 4225 to a realty company bank account ending in 0414 at Wachovia Bank as a commission for 2445 SW 18 Terrace #220 Marina Oaks Condominiums.

L. On or about June 27, 2007, a realty company wrote check 1522 from their account ending in 0414 at Wachovia Bank in the amount of $9,205 made payable to "Quelyory A. Rigal".

M. On or about June 27, 2007, a title company wire transferred $30,999.50 from account ending in 4225 at Bank of America to defendant **JUAN CARLOS SANCHEZ's** account ending in 6481 at Bank of America as commission for 2445 SW 18 Terrace #220 Marina Oaks Condominiums.

N. On or about June 28, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** deposited check #1522 drawn on a realty company bank account ending in 0414 at Wachovia Bank in the amount of $9,205 into her and **EDWARD R. MENA's** joint account ending in 8461 at Bank of America.

O. On or about June 29, 2007, defendant **JUAN CARLOS SANCHEZ** wrote check #2439 drawn on the Algendra LLC account ending in 6481 at Bank of America payable to "C.V." in the amount of $24,003 with the notation "Furniture Incentive MO 220" in the lower left memo section of the check.

P.  On or about July 9, 2007, C.V. deposited check #2439 drawn on the Algendra LLC account ending in 6481 at Bank of America in the amount of $24,309 into C.V.'s  account ending in 5842 at Bank of America.

Q.  On or about July 9, 2007, C.V. wrote check #1339 drawn on C.V.'s account ending in 5842 at Bank of America in the amount of $22,800 made payable to "Quelyory A. Rigal" with the notation "Ref Apt. 220" in the lower left memo section of the check.

R.  On or about July 10, 2007, defendant **QUELYORY A. RIGAL, a/k/a "Kelly,"** deposited check #1399 drawn on C.V.'s account ending in 5842 at Bank of America in the amount of $22,800 into her and **EDWARD R. MENA's** joint account ending in 8461 at  Bank of America.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS  2 - 11
### Wire Fraud
### 18 U.S.C. §§ 1343 and 2

60.     The allegations contained in paragraph 1 through 31 and 35 through 59 of this indictment are re-alleged and incorporated by reference as though fully set forth therein.

61.     On or about the dates enumerated as to each count below, at Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, for the purpose of executing and in furtherance of the scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, the defendants listed as for each count below, did knowingly cause to be transmitted in interstate commerce by means of wire communications certain writings, signs, signals, pictures and sounds as more particularly described for each count below:

31

| COUNT | DEFENDANTS | DATE | DESCRIPTION OF WIRE COMMUNICATIONS |
|---|---|---|---|
| 2 | **JUAN CARLOS SANCHEZ QUELYORY A. RIGAL a/k/a "Kelly" EDWARD R. MENA** | April 24, 2007 | $193,551.66 wire transfer from IndyMac Bank, FSB, Pasadena, California to Bank of America account ending in 4225 in the name of a Miami, Florida title company for the purchase of Marina Oaks Unit 2205. |
| 3 | **JUAN CARLOS SANCHEZ SANDRA P. CAMPO OSBELIA LAZARDI DAVID ARBOLEDA** | April 30, 2007 | $213,280.36 wire transfer from JP Morgan Chase Bank N.A., New York, New York to Bank of America account ending in 4225 in the name of a Miami, Florida title company for the purchase of Marina Oaks Unit 1702. |
| 4 | **JUAN CARLOS SANCHEZ SANDRA P. CAMPO OSBELIA LAZARDI DAVID ARBOLEDA** | April 30, 2007 | $69,238.38 wire transfer from JP Morgan Chase Bank N.A., New York, New York to Bank of America account ending in 4225 in the name of a Miami, Florida title company for the purchase of Marina Oaks Unit 1702. |
| 5 | **JUAN CARLOS SANCHEZ QUELYORY A. RIGAL a/k/a "Kelly" EDWARD R. MENA** | May 9, 2007 | $200,067.19 wire transfer from JP Morgan Chase Bank N.A., New York, New York to Bank of America account ending in 4225 in the name of Miami, Florida title company for the purchase of Marina Oaks Unit 909. |
| 6 | **JUAN CARLOS SANCHEZ SANDRA P. CAMPO OSBELIA LAZARDI DAYANARA MONTERO** | May 11, 2007 | $212,907.83 wire transfer from Wachovia Bank, N.A.,Charlotte, North Carolina to Bank of America account ending in 4225 in the name of a Miami, Florida title company for the purchase of Marina Oaks Unit 215. |

| 7 | JUAN CARLOS SANCHEZ SANDRA P. CAMPO OSBELIA LAZARDI DAYANARA MONTERO | May 11, 2007 | $68,939.71 wire transfer from Wachovia Bank, N.A., Charlotte, North Carolina to Bank of America account ending in 4225 in the name of a Miami, Florida title company for the purchase of Marina Oaks Unit 215. |
|---|---|---|---|
| 8 | JUAN CARLOS SANCHEZ SANDRA P. CAMPO OSBELIA LAZARDI DAYANARA MONTERO CELESTE MOTA | May 21, 2007 | $278,517.67 wire transfer from Wachovia Bank, N.A., Charlotte, North Carolina to Bank of America account ending in 4225 in the name of a Miami, Florida title company for the purchase of Marina Oaks Unit 1709. |
| 9 | JUAN CARLOS SANCHEZ SANDRA P. CAMPO OSBELIA LAZARDI | May 22, 2007 | $278,153.88 wire transfer from Wachovia Bank, N.A., Charlotte, North Carolina to Bank of America account ending in 4225 in the name of a Miami, Florida title company for the purchase of Marina Oaks Unit 2107. |
| 10 | JUAN CARLOS SANCHEZ SANDRA P. CAMPO DAYANARA MONTERO | June 13, 2007 | $277,522.07 wire transfer from Wachovia Bank, N.A., Charlotte, North Carolina to Bank of America account ending in 4225 in the name of a Miami, Florida title company for the purchase of Marina Oaks Unit 1205. |
| 11 | JUAN CARLOS SANCHEZ QUELYORY A. RIGAL a/k/a "Kelly" | June 22, 2007 | $199,778.88 wire transfer from JP Morgan Chase Bank N.A., New York, New York to Bank of America account ending in 4225 in the name of a Miami, Florida title company for the purchase of Marina Oaks Unit 220. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 12 - 16
### Mail Fraud
### 18 U.S.C. §§ 1341 and 2

62.     The allegations contained in paragraph 1 through 31 and 35 through 59 of this indictment are re-alleged and incorporated by reference as though fully set forth therein.

63.     On or about the dates specified below as to each count below, at Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, for the purpose of executing the scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretense, representations, and promises, the defendants enumerated as for each count below, did knowingly cause to be sent and delivered by private and commercial interstate carriers, according to the directions thereon, certain mail matter as more particularly described for each count below:

| COUNT | DEFENDANTS | DATE | DESCRIPTION OF MAILING |
|---|---|---|---|
| 12 | **JUAN CARLOS SANCHEZ QUELYORY A. RIGAL a/k/a "Kelly" EDWARD R. MENA** | April 25, 2007 | Mailing of closing package for 2250 SW 18 Terrace #2205, Fort Lauderdale, FL by a title company in Miami, Florida to IndyMac Bank, FSB, Tampa, FL via FedEx with tracking number 790725042783. |
| 13 | **JUAN CARLOS SANCHEZ SANDRA P. CAMPO OSBELIA LAZARDI DAYANARA MONTERO** | May 15, 2007 | Mailing of closing package for 2445 SW 18 Terrace #215, Fort Lauderdale, FL by a title company in Miami, Florida to America Mortgage Network Inc., Tampa, FL via FedEx with tracking number 798175488330. |

| 14 | **JUAN CARLOS SANCHEZ SANDRA P. CAMPO OSBELIA LAZARDI DAYANARA MONTERO CELESTE MOTA** | May 21, 2007 | Mailing of closing package for 2550 SW 18 Terrace #1709, Fort Lauderdale, FL by a title company in Miami, Florida to America Mortgage Network Inc., Tampa, FL via FedEx with tracking number 791304507543. |
| 15 | **JUAN CARLOS SANCHEZ SANDRA P. CAMPO OSBELIA LAZARDI** | May 23, 2007 | Mailing of closing package for 2550 SW 18 Terrace #2107, Fort Lauderdale, FL by a title company in Miami, Florida to America Mortgage Network Inc., Plantation, FL via FedEx with tracking number 799645318110. |
| 16 | **JUAN CARLOS SANCHEZ SANDRA P. CAMPO DAYANARA MONTERO** | June 14, 2007 | Mailing of closing package for 2445 SW 18 Terrace #1205, Fort Lauderdale, FL by a title company in Miami, Florida to America Mortgage Network Inc., Plantation, FL via FedEx with tracking number 799658495340. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. §§ 981 and 982)

1.      The allegations contained in paragraphs 1 through 63 of this Indictment are re-alleged and, by this reference, fully incorporated herein for the purpose of alleging forfeitures to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982(a)(2), and the procedures outlined at Title 21, United States Code Section 853.

2.      Upon conviction of a conspiracy, as alleged in Count 1 of this Indictment, to commit violations of Title 18, United States Code, Sections 1341 and 1343 (Mail and Wire Fraud), all in violation of Title 18, United States Code, Section 1349, the defendants, **JUAN CARLOS SANCHEZ, QUELYORY A. RIGAL (a/ka KELLY), SANDRA P. CAMPO, OSBELIA LAZARDI, DAYANARA MONTERO, EDWARD R. MENA, CELESTE MOTA,** and **DAVID ARBOLEDA,** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property, real or personal, which constitutes, or is derived from, proceeds traceable to such violations.

3.      Upon a conviction of the offenses alleged in Counts 2 through 11, for violations of Title 18, United States Code, Section 1343, Wire Fraud, and Counts 12 through 16 for violations of Title 18, United States Code, Section 1341, Mail Fraud, the defendants **JUAN CARLOS SANCHEZ, QUELYORY A. RIGAL, a/ka "Kelly," SANDRA P. CAMPO, OSBELIA LAZARDI, DAYANARA MONTERO, EDWARD R. MENA, CELESTE MOTA** and **DAVID ARBOLEDA** shall forfeit to the United States all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to a violation, pursuant to Title 18, United States Code, Section 982(a)(2).

4.      The property subject to forfeiture includes, but is not limited to:

(a)      A money judgment in the amount of approximately $39,000,000.

5.      If the property described above as being subject to forfeiture, as a result of any act or omission of the Defendants,

(a)      cannot be located upon the exercise of due diligence;
(b)      has been transferred or sold to, or deposited with a third person;
(c)      has been placed beyond the jurisdiction of the Court;
(d)      has been substantially diminished in value; or
(e)      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Section 982(a)(2) and Title 21, United States Code, Section 853.

A TRUE BILL

WIFREDO A. FERRER
UNITED STATES ATTORNEY

THOMAS P. LANIGAN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

JUAN CARLOS SANCHEZ, et al.,

Defendants.

_____/

CASE NO. _____

# CERTIFICATE OF TRIAL ATTORNEY*

Superseding Case Information:

Court Division: (Select One)

| | | |
|---|---|---|
| _____ | Miami | _____ Key West |
| __X__ | FTL | _____ WPB _____ FTP |

New Defendant(s)          Yes _____   No _____
Number of New Defendants
Total number of counts                    _____

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:   (Yes or No)    NO
     List language and/or dialect    English

4.   This case will take    20    days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

     (Check only one)                                          (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | _____ | Misdem. | _____ |
| IV | 21 to 60 days | __X__ | Felony | __X__ |
| V | 61 days and over | _____ | | |

6.   Has this case been previously filed in this District Court?  (Yes or No)    No
If yes:
Judge: _____    Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?    (Yes or No)    No
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____    District of _____

Is this a potential death penalty case? (Yes or No)    No

7.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?  _____ Yes   __X__ No

8.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?  _____ Yes   __X__ No

THOMAS P. LANIGAN
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No./Court No. A5500033

*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
<u>PENALTY SHEET</u>

**Defendant's Name**: <u>JUAN CARLOS SANCHEZ</u>  **Case No**: _____

Count  #: 1
 <u>Conspiracy to Commit Mail and Wire Fraud;</u>_____

  <u>In violation of Title 18  United States Code, Section 1349</u>_____

**\* Max.Penalty**: <u>  20 years' imprisonment; $250, 000 fine and/or not more than the greater of</u>
<u>twice the gross gain or twice the gross loss; and 3 years' supervised release</u>

Count  #: 2-11
 <u>Wire Fraud;</u>_____

  <u>In violation of Title 18  United States Code, Section 1343</u>_____

**\* Max.Penalty**: <u>  20 years' imprisonment; $250, 000 fine and/or not more than the greater of</u>
<u>twice the gross gain or twice the gross loss; and 3 years' supervised release</u>

Count  #: 12-16
 <u>Mail Fraud;</u>_____

  <u>In violation of Title 18  United States Code, Section 1341</u>_____

**\* Max.Penalty**: <u>  20 years' imprisonment; $250, 000 fine and/or not more than the greater of</u>
<u>twice the gross gain or twice the gross loss; and 3 years' supervised release</u>
Count  #:

_____

_____

**\*Max. Penalty:**  _____
Count  #:

_____

_____

**\*Max. Penalty:**  _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
PENALTY SHEET

**Defendant's Name**: **QUELYORY A. RIGAL (a/ka KELLY)**  **Case No**: _____

Count #: 1

 Conspiracy to Commit Mail and Wire Fraud; _____

  In violation of Title 18  United States Code, Section 1349 _____

**\* Max.Penalty:**       20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release

Count #: 2, 5, 11

 Wire Fraud; _____

  In violation of Title 18  United States Code, Section 1343 _____

**\* Max.Penalty**    20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release

Count #: 12

 Mail Fraud; _____

  In violation of Title 18  United States Code, Section 1341 _____

**\* Max.Penalty:**       20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release

Count #:
_____

_____

**\*Max. Penalty:** _____

Count #:
_____

_____

**\*Max. Penalty:** _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

**Defendant's Name**: SANDRA P. CAMPO   **Case No**: _____

Count #: 1

 Conspiracy to Commit Mail and Wire Fraud; _____

 In violation of Title 18 United States Code, Section 1349 _____

**\* Max.Penalty**:   20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release

Count #: 3, 4, 6-10

 Wire Fraud; _____

 In violation of Title 18 United States Code, Section 1343 _____

**\* Max.Penalty** 20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release

Count #: 13-16

 Mail Fraud; _____

 In violation of Title 18 United States Code, Section 1341 _____

**\* Max.Penalty**   20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release

Count #:

_____

_____

**\*Max. Penalty**: _____

Count #:

_____

_____

**\*Max. Penalty**: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
<u>PENALTY SHEET</u>

**Defendant's Name**: <u>OSBELIA LAZARDI</u>  **Case No**: _____

Count  #: 1
 Conspiracy to Commit Mail and Wire Fraud; _____

  In violation of Title 18  United States Code, Section 1349 _____

**\* Max.Penalty:**      <u>20 years' imprisonment; $250, 000 fine and/or not more than the greater of</u>
<u>twice the gross gain or twice the gross loss; and 3 years' supervised release</u>

Count  #: 3, 4, 6-9
 Wire Fraud; _____

  In violation of Title 18  United States Code, Section 1343 _____

**\* Max.Penalty:**      <u>20 years' imprisonment; $250, 000 fine and/or not more than the greater of</u>
<u>twice the gross gain or twice the gross loss; and 3 years' supervised release</u>

Count  #: 13-15
 Mail Fraud; _____

  In violation of Title 18  United States Code, Section 1341 _____

**\* Max.Penalty:**      <u>20 years' imprisonment; $250, 000 fine and/or not more than the greater of</u>
<u>twice the gross gain or twice the gross loss; and 3 years' supervised release</u>
Count  #:

_____

_____

**\*Max. Penalty:** _____
Count  #:

_____

_____

**\*Max. Penalty:** _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
<u>PENALTY SHEET</u>

**Defendant's Name**: **DAYANARA MONTERO** **Case No**: _____

Count #: 1
 Conspiracy to Commit Mail and Wire Fraud; _____

  In violation of Title 18  United States Code, Section 1349 _____

**\* Max.Penalty**:  20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release

Count #: 6-8, 10
 Wire Fraud; _____

  In violation of Title 18  United States Code, Section 1343 _____

**\* Max.Penalty**:  20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release

Count #: 13, 14, 16
 Mail Fraud; _____

  In violation of Title 18  United States Code, Section 1341 _____

**\* Max.Penalty**:  20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release
Count #: _____

_____

**\*Max. Penalty**: _____

Count #: _____

_____

**\*Max. Penalty**: _____

_____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
PENALTY SHEET

**Defendant's Name**: **EDWARD R. MENA**      **Case No**: _____

Count  #: 1

 Conspiracy to Commit Mail and Wire Fraud; _____

  In violation of Title 18  United States Code, Section 1349 _____

**\* Max.Penalty**:      20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release

Count  #: 2, 5
 Wire Fraud; _____

  In violation of Title 18  United States Code, Section 1343 _____

**\* Max.Penalty**:      20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release

Count  #: 12
 Mail Fraud; _____

  In violation of Title 18  United States Code, Section 1341 _____

**\* Max.Penalty**:      20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release

Count  #:

_____

_____

**\*Max. Penalty:** _____

_____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
<u>PENALTY SHEET</u>

**Defendant's Name**: <u>**CELESTE MOTA**</u>    **Case No**: _____

Count  #: 1

 Conspiracy to Commit Mail and Wire Fraud; _____

  In violation of Title 18  United States Code, Section 1349 _____

\* **Max.Penalty**:      20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release

Count  #: 8
 Wire Fraud; _____

  In violation of Title 18  United States Code, Section 1343 _____

\* **Max.Penalty**:      20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release

Count  #: 14
 Mail Fraud; _____

  In violation of Title 18  United States Code, Section 1341 _____

\* **Max.Penalty**:      20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release

Count  #:

_____

_____

\***Max. Penalty:** _____

_____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
<u>PENALTY SHEET</u>

**Defendant's Name**: <u>**DAVID ARBOLEDA**</u>      **Case No**: _____

Count  #: 1

 Conspiracy to Commit Mail and Wire Fraud; _____

  In violation of Title 18  United States Code, Section 1349 _____

**\* Max.Penalty**:     20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release

Count  #: 3-4
 Wire Fraud; _____

  In violation of Title 18  United States Code, Section 1343 _____

**\* Max.Penalty**:     20 years' imprisonment; $250, 000 fine and/or not more than the greater of twice the gross gain or twice the gross loss; and 3 years' supervised release

Count  #:

_____

_____

**\*Max. Penalty**: _____

 Count  #:

_____

_____

**\*Max. Penalty**: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**